Argued 10 July, decided 23 October, 1906.

## HANLEY v. COMBS.

87 Pac. 143.

MONEY RECEIVED—BREACH OF CONTRACT TO SELL—PLEADING OFFER TO PERFORM BY PLAINTIFF.

1. In an action to recover money paid on a contract that has been repudiated, as money received to the use of plaintiff, no offer of performance or declaration of readiness to perform is necessary.

MONEY RECEIVED—ATTACHMENT—IMPLIED CONTRACT.

2. An action to recover money paid on a contract that the other party afterward repudiated is in form an action of assumpsit and the legal liability to repay is an implied contract for the direct payment of money, under B. & C. Comp. § 296, subd. 1.

SALES—RIGHT OF RESCISSION BY SELLER FOR FAULT OF BUYER—RECOVERY OF MONEY PAID IN PART PERFORMANCE.

3. In general terms it may be stated that one who has paid money in part performance of a contract which he subsequently refuses to complete, the other party being willing to comply on his part, cannot recover the sum so paid, but it is a rule subject to very many exceptions and the particular facts will largely influence the decision. If, however, the subsequent refusal to perform does not go to the entire contract in effect, then the seller must perform and recoup his loss through an action for damages, or return the consideration.

IDEM.

4. Where the purchaser of a number of articles agrees to determine their quality before delivery and acceptance, the mere refusal to pass articles offered which in fact were up to the required standard, if honestly done, is not such a substantial abandonment of the contract as to justify a rescission by the seller, whatever may be the liability of the purchaser in damages for violating his agreement to buy.

SALES—RESCISSION BY PURCHASER—QUESTION FOR JURY.

5. In such a case it is for the jury to determine whether the conduct of the buyer was a refusal to comply with the terms of the contract, subjecting him to damages, or was such an abandonment of the contract as to justify the seller in rescinding it and forfeiting the payment already made.

SALES—ERRONEOUS INSTRUCTION AS TO DELIVERY.

6. An instruction imposing on a party to a contract in litigation a condition not included therein is so erroneous as to be reversible; as, instructing that the purchaser in a contract of sale is under obligation to accept the property at another place than the one named in the writing.

COMPETENCY OF EVIDENCE—RES INTER ALIOS ACTA.

7. Evidence of transactions between a seller of property and a third person concerning the subject of sale, not in the presence or hearing of the buyer, are not competent evidence against him, being acts between strangers by which he ought not to be injured.

For instance: Where, under a contract to sell a certain number of articles, the buyer was to satisfy himself as to the quality of those offered, evidence that about the time the purchaser began his inspection the seller arranged with a third person to let the purchaser select from his stock also, if necessary, in order to get the required number, is incompetent, in the absence of a showing that the purchaser knew of the arrangement, since it was not a transaction in which the buyer was concerned.

WAIVER OF OBJECTION TO PERFORMANCE OF CONTRACT.

. 8. A party to a contract should state any objections he may have at the time performance is tendered, and such objections as can then be made must be made or they will be considered waived.

For instance: A contractor for the purchase of a stated number of articles who made no objection that the total number was not tendered him for examination, cannot afterward claim a breach of the contract because the seller did not offer for inspection the entire number he agreed to sell; that objection was waived by not making it at the time of the inspection.

From Grant: GEORGE E. DAVIS, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action by The William Hanley Co., a private corporation, against J. D. Combs to recover $3,300 advanced by the plaintiff on an executory contract for the sale of personal property. The complaint alleges that on August 2, 1905, the plaintiff and defendant entered into the following written contract:

"This Agreement, entered into this 2d day of August, 1905, by and between J. D. Combs, of John Day, Or., and Wm. Hanley, Mgr., of Burns, Ore., for and in consideration of thirty-three hundred dollars ($3,300.00) and further consideration hereinafter stated, that the said J. D. Combs sells to Wm. Hanley, Mgr., 600 head of three and four year old steers, now in Bear Valley and vicinity, at $2.65 per hundred, delivered and weighed at Baker City, Or., on or about 1st day of September, 1905, cattle to be taken off feed and water at six o'clock in the morning and weighed at two o'clock evening, it is further agreed that said cattle shall be passed as to quality, in Bear Valley, before starting, and that no thin-fleshed or rough cattle, or Holstein or Jersey blood shall be accepted.

J. D. Combs.
Wm. Hanley, Mgr."

It further alleges that under and by virtue of the terms of this contract the plaintiff advanced and paid to the defendant $3,300 on account of the purchase price of the cattle mentioned and referred to therein; but that defendant has wholly failed, neglected and absolutely refused to deliver the cattle or any part thereof at Baker City or elsewhere, or at all; that plaintiff has demanded a repayment to it of the moneys so advanced, which has been refused. The complaint prays for judgment for such amount, with interest from the commencement of the action.

The answer admits the making of the contract set out in the complaint and the payment of the money by the plaintiff, and affirmatively alleges that on August 20, 1905, the defendant tendered to the plaintiff at Bear Valley 600 head of cattle of the kind and quality specified in the contract for the purpose of being passed as to quality, but that plaintiff, without cause, failed, neglected and refused to pass such cattle or any part thereof, except 222 head, whereupon defendant elected to rescind the contract and thereafter sold and disposed of the cattle to other parties  The reply put in issue the new matter alleged in the answer.

After the commencement of the action a writ of attachment was sued out by the plaintiff and certain personal property seized by virtue thereof, but on motion of the defendant the attachment was dissolved. A trial was thereafter had and a verdict rendered in favor of the defendant. From the judgment entered on such verdict plaintiff appeals, complaining that the court erred in dissolving the attachment, in the giving of certain instructions to the jury, and in the admission of evidence.                              REVERSED.

For appellant there was a brief over the name of *Butcher, Clifford & Correll*, with oral arguments by *Mr. William Fontaine Butcher* and *Mr. Morton D. Clifford*.

For respondent there was a brief over the name of *Cattanach & Wood,* with an oral argument by *Mr. Wells Warington Wood.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

1. The argument in support of the motion to dissolve the attachment is that the complaint does not state facts sufficient to constitute a cause of action, because it does not allege that the plaintiff was ready, willing and able to perform the contract on its part, or that it tendered or offered to pay the balance of the purchase price. This is not an action for a breach of the contract between the plaintiff and defendant. It is an action to rcover back money paid by the plaintiff thereon as money had and received by the defendant for its use, on the ground that the contract has been wrongfully and unlawfully rescinded

and put an end to by the defendant. In such an action the plaintiff is not required to allege or prove an offer of perform-ance on its part, nor readiness to perform, whatever might be the rule in an action to recover damages for a breach of the contract: *Main* v. *King,* 8 Barb. 535; *Monroe* v. *Reynolds,* 47 Barb. 574. If one of the parties to a contract wrongfully refuses to comply therewith, the other party, if not himself in fault, may elect to treat the contract as rescinded and recover back the consideration, or whatever else has been paid thereon: Bishop, Contracts, § 834. And he is not obliged to allege or prove a tender or offer to perform the rescinded contract.

2. An action to recover back the money paid on a contract which has been wrongfully rescinded is in form assumpsit, and is on an implied contract within the meaning of the attachment laws of this State: 2 Enc. Pl. & Pr. 1016; *S. C. V. Peat Fuel Co.* v. *Tuck,* 53 Cal. 304. The complaint therefore states a cause of action, and the motion to dissolve the attachment should have been denied.

The record discloses that on August 20, 1905, the plaintiff's manager, William Hanley, and the defendant met by agreement in Bear Valley for the purpose of passing upon the quality of the cattle to be subsequently delivered by the defendant to the plaintiff at Baker City in pursuance of the written contract; that defendant had at the time and place stated a band of 578 head of cattle which he offered to Hanley for the purpose of having him pass upon the quality; that after Hanley looked the band over he selected therefrom some 200 or 250 head as complying with the contract and such as he would be willing to accept when delivered, but the defendant, being dissatisfied with the manner in which Hanley was cutting the cattle, notified him that he would refuse to be further bound by the contract, and subsequently sold the cattle to other parties, and never delivered or offered to deliver to plaintiff any cattle whatever under the contract in question. There is much testimony in the record as to what was said and done by the respective parties at the time the cattle were offered by defendant to plaintiff for the purpose of having them passed as to whether they were of the

kind and quality called for by the contract, but this testimony is unimportant on this appeal. The question for trial was whether Hanley's acts and conduct amounted to a repudiation or abandonment of the contract, and the evidence in question was important as bearing on that question, but its weight and value were for the jury.

3. Upon this point the court instructed the jury:

"If you should find from a preponderance of the evidence that at any stage of the passing upon the cattle in question the plaintiff refused to pass and accept a three or four year old steer which was not in fact thin flesh or rough or Holstein or Jersey blood, the defendant had the right to refuse any other or greater number of cattle for plaintiff's inspection, and that it would amount to a repudiation of the agrement on the part of the plaintiff."

And the court further instructed:

"If you should find that the defendant had at any place in Bear Valley at the time agreed upon 600 head of cattle of the kind, age and quality required, and was ready, able and willing to furnish them to the plaintiff to be then and there passed and accepted by it, and the plaintiff refused to pass and accept 278 head or any less number of such cattle, then the plaintiff made breach of and repudiated the agreement, and that in that case it is not entitled to recover back any part of the money advanced by it upon the agreement."

By these instructions the jury were told in effect that the refusal of Hanley, the plaintiff's manager, to pass and accept any one animal which, in their opinion, the evidence showed to be of the kind and quality specified in the contract would be such a repudiation of the contract by the plaintiff as would defeat a recovery in this action; but this is not the law. The rule is unquestioned that a party who has advanced money in part performance of a contract, and then refused to proceed to its ultimate conclusion, the other party being ready and willing to perform on his part, will not be permitted to recover back what he has advanced: *Ketchum* v. *Evertson,* 13 Johns. 359 (7 Am. Dec. 384) ; *Hansbrough* v. *Peck,* 72 U. S. (5 Wall.) 497 (18 L. Ed. 520) ; *Gibbons* v. *Hayden,* 3 Kan. App. 38 (44 Pac. 445) ; *Neis* v. *O'Brien,* 12 Wash. 358 (41 Pac. 59, 50 Am. St.

Rep. 894) ; *Walter* v. *Reed,* 34 Neb. 544 (52 N. W. 682). But it is not every breach that will amount to such a repudiation or authorize the other party to rescind the contract and retain what has been paid or advanced thereon. The nature of each case must be considered, and, as Mr. Bishop says, it is probably impossible to state a rule applicable to all the varying facts. After quoting from some of the decisions he says: "In general terms, the doctrine is that the breach, to justify a rescission, must be of a dependant covenant, or willful, or in a substantial part comprehending the root of the whole:" Bishop, Contracts (En. Ed.), § 828. And if the breach by a vendee be not of such a character as to amount to a repudiation of the contract or a refusal to proceed to its ultimate conclusion, and the seller, without a demand or offer to perform and without notice to the vendee, disposes of the subject of the contract, the latter may treat it as a wrongful rescission, and the law will give him a right of action to recover back the consideration paid in part performance: *Monroe* v. *Reynolds,* 47 Barb. 574; *Fancher* v. *Goodman,* 29 Barb. 315; *Raymond* v. *Bearnard,* 12 Johns. 274 (7 Am. Dec. 371).

4. Now, in this case, the cattle which defendant agreed to sell and deliver to the plaintiff were to be passed as to quality in Bear Valley before being driven to Baker City for final delivery. It was the duty of the plaintiff to comply in good faith with this part of the contract, and if by words, or by their equivalent in acts, it refused to do so, the defendant could lawfully rescind. But before he could treat the contract as at an end, dispose of the property to other parties and keep the $3,300 advanced thereon by the plaintiff, it must appear that the plaintiff's words, acts or conduct were willful or amounted to a repudiation or abandonment of the contract "in some substantial part, comprehending the whole." The mere refusal to pass cattle which in fact complied with the contract, if done in good faith, would not of itself amount to such a repudiation, and would not justify the defendant in rescinding the contract, although it might render plaintiff liable in damages for a breach thereof. The case turns upon the question whether the plain-

tiff abandoned or repudiated the contract, or, in other words, refused to proceed to its ultimate conclusion, and not whether its agent may have been mistaken in his judgment as to the quality of some of the cattle offered to him by the defendant for passing, or whether he may have been unnecessarily exacting in his requirements as to quality.

5. The case should have been submitted to the jury upon this theory, leaving them to find from the entire testimony whether plaintiff's acts and conduct amounted in effect to an abandonment or repudiation of the contract or a refusal to comply with its terms. The instructions as given were erroneous because they did not conform to this principle.

6. These instructions and others given by the court were also erroneous because they imposed the duty upon plaintiff, not only to pass the cattle as to quality in Bear Valley, but to accept them at that place, while the contract expressly provides that the cattle shall be delivered, accepted and paid for at Baker City. They were to be passed as to quality only in Bear Valley, and no acceptance was contemplated until final delivery.

7. The defendant was permitted to prove on the trial, over plaintiff's objection and exception, that about the time the plaintiff's manager began inspecting the cattle in Bear Valley he made arrangements with one Brown to turn in on his contract with plaintiff 150 head belonging to Brown if necessary. This evidence was, we think, under the circumstances, incompetent. The plaintiff was not informed of the arrangement between defendant and Brown, nor was it advised that the Brown cattle were to be considered as a part of the number which the defendant agreed to sell to it, nor was any such cattle offered to it for passing as to quality. The arrangement was wholly between Brown and the defendant, and had no connection with the contract in question.

8. Moreover, no objection was made by plaintiff to passing upon the cattle offered because the entire number was not tendered at the time, nor did it refuse to proceed with the contract on that account. It therefore cannot now claim that the defendant did not comply with his contract because he did not offer

for passing at the time the entire number of cattle which he agreed to deliver at Baker City.

Judgment reversed, and new trial ordered.          REVERSED.